# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**LISA J. HALSTEAD,**
**Claimant Below, Petitioner**

**FILED**

June 24, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 15-0770** (BOR Appeal No. 2050235)
                    (Claim No. 2012024663)

**LINCARE HOLDINGS, INC.,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Lisa J. Halstead, by Jonathan C. Bowman, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Lincare Holdings, Inc., by Matthew L. Williams, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated July 30, 2015, in which the Board affirmed a January 29, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's December 18, 2013, decision which granted Ms. Halstead a 5% permanent partial disability award. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Halstead, a respiratory therapist, was injured in the course of and resulting from her employment on January 23, 2012, when she was in a motor vehicle accident. She was treated immediately after at Wheeling Hospital where she reported a burning sensation on her left side from hitting the car door. She also reported pain in her left hip and left clavicle. At that time, Ms. Halstead denied back and neck pain. She was diagnosed with hip and clavicle contusions and discharged home. Cervical and lumbar MRIs were performed on March 1, 2013. The cervical MRI was normal, and the lumbar MRI showed mild facet arthritic changes at L4-5 and L5-S1.

1

Ms. Halstead underwent four independent medical evaluations in this case in order to assess the amount of permanent impairment she sustained as a result of the compensable injury. On July 1, 2013, Thomas Kramer, M.D., performed an independent medical evaluation in which Ms. Halstead reported that she experienced immediate head, lower back, and right foot pain following the compensable injury. Dr. Kramer opined that she suffered a cervical and lumbar sprain as a result of the compensable injury. He noted that she originally reported left hip and clavicle pain and denied lumbar or cervical pain. Dr. Kramer found no objective findings on her physical examination to substantiate her ongoing complaints. She had normal range of motion, a normal neurological examination in her upper and lower extremities, and no evidence of cervical or lumbar radiculopathy. Dr. Kramer opined that Ms. Halstead had reached maximum medical improvement and sustained no permanent impairment.

On October 30, 2013, Victoria Langa, M.D., performed an independent medical evaluation in which she noted that Ms. Halstead complained of lower back pain, numbness, and discomfort. She also reported some cervical spine discomfort on the right side. Dr. Langa diagnosed status post cervical sprain, status post lumbar sprain, and pre-existing mild degenerative facet changes at L4-5 and L5-S1 as seen by an MRI report. She opined that Ms. Halstead had reached maximum medical improvement for her compensable injury. For the cervical spine, Dr. Langa assigned no impairment under Table 75 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) and also found no impairment using range of motion measurements. She therefore assessed 0% whole person impairment for the cervical spine. For the lumbar spine, Dr. Langa found no impairment based on Table 75 of the American Medical Association's *Guides*. However, using range of motion measurements, she assessed 5% lumbar spine impairment. Her total recommendation was therefore 5% whole person impairment. The claims administrator granted Ms. Halstead a 5% permanent partial disability award on December 18, 2013, based on Dr. Langa's evaluation.

On February 27, 2014, Bruce Guberman, M.D., performed an independent medical evaluation in which he noted that Ms. Halstead reported her neck pain had improved but was still present. Her lower back pain had remained unchanged since the injury. Dr. Guberman diagnosed acute and chronic post-traumatic cervical and lumbosacral sprains as well as chronic, post-traumatic headaches. He opined that Ms. Halstead had reached maximum medical improvement. For the cervical spine, he assessed 5% whole person impairment. He found 4% impairment under Table 75 of the American Medical Association's *Guides* and 1% using range of motion measurements. For the lumbar spine, he assessed 5% impairment using Table 75 and 6% using range of motion measurements for a combined total of 11% impairment. He then placed Ms. Halstead in Lumbar Category II of West Virginia Code of State Rules § 82-20-C (2006) and adjusted the rating to 8% impairment. His total rating was 13% whole person impairment.

The fourth and final independent medical evaluation was performed on September 8, 2014, by Christopher Martin, M.D. He noted that Ms. Halstead reported lower back pain, neck pain, right shoulder pain, and headaches. He opined that she suffered contusions, a lumbosacral strain, and a cervical strain as a result of the compensable injury. He did not think that her right shoulder pain, right leg pain, headaches, or teeth grinding condition were related to the compensable injury because she did not initially report them, imaging studies were normal, and

there were many inconstancies between her assertions and the medical record. He found she had reached maximum medical improvement for the compensable injury. Dr. Martin assessed 9% cervical impairment using range of motion measurements; however, he placed Ms. Halstead in Cervical Category I of West Virginia Code of State Rules § 82-20-E (2006) and adjusted the rating to 0% impairment. Dr. Martin stated that he placed her in Category I because he found that no examiner had ever documented significant clinical findings. Dr. Martin found 0% lumbar impairment using range of motion measurements. His total rating was 0% impairment. He stated that Dr. Guberman found impairment using Table 75; however, Dr. Martin opined that Dr. Guberman's own physical examination failed to support any of the muscular rigidity required.

The Office of Judges affirmed the claims administrator's decision in its January 29, 2015, Order. The Office of Judges reviewed the four independent medical evaluations of record and determined that Dr. Kramer found no lingering disability and did not make an impairment recommendation. Dr. Langa recommended 0% cervical impairment and 5% lumbar impairment. Dr. Guberman assessed 5% cervical spine impairment and 8% lumbar spine impairment. Finally, Dr. Martin assessed 0% impairment for both the cervical and lumbar spine. Dr. Martin also set forth various reasons that he disagreed with Dr. Guberman's assessment including placement of Ms. Halstead in Cervical and Lumbar Category II. Dr. Martin opined that there was no evidence to support radiculopathy, no structural abnormalities, and no clinical findings of a significant injury. The Office of Judges noted that Dr. Guberman's rating was significantly higher than the other three examiners'. His report was determined to be unpersuasive. The Office of Judges concluded that a preponderance of the evidence shows that Ms. Halstead sustained 5% lumbar impairment and 0% cervical impairment as a result of her compensable injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on July 30, 2015.

After review, we agree with the reasoning and conclusions of the Board of Review. Dr. Guberman's report is inconsistent with the other reports of record. The other physicians found either 0% or 5% impairment. Dr. Guberman's findings of 5% cervical spine impairment and 8% lumbar spine impairment are not supported by the other evaluations or by the medical evidence of record. His report is therefore unpersuasive. A preponderance of the evidence indicates Ms. Halstead is entitled to a 5% permanent partial disability award.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

3

**ISSUED: June 24, 2016**


**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

4